IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARYANN HODGES, o/b/o <br> H.M.H., a minor child, <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI,[1] <br> Acting Commissioner of the Social <br> Security Administration, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. CIV-20-302-RAW-SPS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## REPORT AND RECOMMENDATION

The claimant Maryann Hodges requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits for her son H.M.H. under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining H.M.H. was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

**Social Security Law and Standard of Review**

Disability for persons under the age of eighteen according to the Social Security Act is defined as a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations and that can be expected

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

to cause death or that has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 416.906. Social Security Regulations implement a three-step sequential process to evaluate a claim for Child's Supplemental Security Income Benefits under Title XVI of the Social Security Act.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[2] Step one requires claimant to establish the child is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 416.971-416.976. Step two requires claimant to establish the child has an impairment or combination of impairments that is severe. If the child is engaged in substantial gainful activity or is found not to have a medically determinable impairment or the impairment causes a slight abnormality or combination of slight abnormalities resulting in no more than minimal functional limitations, he is considered not disabled. At step three, the child's impairment must meet, medically equal, or functionally equal the severity of an impairment in the listing of impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A child suffering from a listed impairment or impairments that meets or medically equals the requirements of the listing or that functionally equals the listing and meets the duration requirement will be found disabled. See 20 C.F.R. § 416.924(a)-(d)(2).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Background and Procedural History

H.M.H. was thirteen years old at the time of the administrative hearing (Tr. 34, 168). The claimant alleges H.M.H. was disabled as of his application date of July 10, 2018, due to attention deficit hyperactivity disorder ("ADHD"), generalized anxiety disorder, social anxiety disorder (social phobia), and depressive disorder (Tr. 204). On July 10, 2018, the claimant filed an application for supplemental security income benefits under Title XVI (42 U.S.C. § 1381 *et seq*.). Her application was denied. ALJ James Stewart conducted an administrative hearing and determined that H.M.H. was not disabled in a written opinion dated February 5, 2020 (Tr. 16-28). The Appeals Council denied review, so the ALJ's findings represent the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step three of the sequential evaluation. He determined H.M.H. had the severe impairments of ADHD, generalized anxiety disorder, social anxiety disorder, and depressive episodes with intermittent major depression with mood congruent psychotic features, but that such impairments did not meet and were neither medically nor functionally equivalent to any of the relevant listings (Tr. 17-28). The ALJ thus concluded that H.M.H. was not disabled (Tr. 28).

Review

The claimant contends that the ALJ failed to: (i) properly consider all of the evidence, (ii) find that H.M.H.'s impairments functionally equaled the severity of a Listing, and (iii) properly perform a consistency evaluation. The undersigned Magistrate Judge finds these contentions unpersuasive.

The relevant medical evidence reveals that as far back as 2016, the claimant was reported to have messy handwriting and trouble following instructions; he was assessed with developmental coordination disorder and therefore referred for occupational therapy (Tr. 297, 301, 312-314). Occupational therapy notes indicate functional limitations related to attention to task, coordination deficit, endurance, motor planning deficits, and strength deficit (Tr. 406). Treatment was directed to address fine motor and visual motor skills, self-care skills, executive functioning, attention, and social skills (Tr. 407). At a re-evaluation in February 2019, the claimant's visual perception was scored two years below his age level and his writing included "very poor spacing and poor formation" and declined as he progressed through writing three sentences (Tr. 567). He was noted to need assistance in most activities of daily living, including buttoning up a shirt, fastening jeans, fastening a belt, and choosing clothes appropriate for time of day, season, and occasion (Tr. 568, 570).

He was also diagnosed with ADHD and prescribed medication for it (Tr. 301, 314). At a follow-up appointment in June 2018 (one month prior to the alleged onset date), treatment notes reflect the claimant reported a better school year with no significant problems or behavior concerns, and that his medications were helping with his ADHD and

sleeping difficulties (Tr. 334). The claimant's appetite and eating habits were a matter of concern, however, and he was referred to a dietician. On August 7, 2018, H.M.H.'s dietician noted that his BMI was decreasing, at least in part due to his picky eating, noting that he was not getting an optimal diet (Tr. 350). She wondered whether the claimant's ADHD medications were altering his metabolism and appetite, and she was unsure whether his ADHD was contributing to weight loss or if he was becoming more limited in foods he would eat (Tr. 350). This assessment was continued through at least May 2019 (Tr. 553).

In 2017 (prior to the alleged onset date), Dr. Hilary Hughes conducted a neuropsychological evaluation of H.M.H., in which she found *inter alia*, that the claimant's full scale IQ score was 85 (Tr. 278). However, she noted that the score should not be interpreted because there was "significant variability in his performance across the five indices that make up this score" (Tr. 278). In conclusion, she found that H.M.H.'s results were in the low average to average range, and that his anxiety appeared to impair his academic and social functioning which warranted a generalized anxiety disorder diagnosis as well as a social anxiety disorder given his fear of performing in front of others or being social humiliated (Tr. 283-284). She also found he had a depressive disorder, and maintained his diagnosis of ADHD (Tr. 284). H.M.H. also displayed suicidal ideation during this evaluation, and Dr. Hughes recommended that it be monitored (Tr. 284).

The claimant underwent a second neuropsychological evaluation on October 10 and 23, 2018, led by pre-doctoral intern Larissa Miller, M.A., and supervised by Dr. Jennifer Brusich, Psy.D. (Tr. 487-497). During this evaluation, the claimant's full scale IQ score was 94, and he performed in the average range across indices, although his scores were

also consistent with his poorly developed handwriting skills (Tr. 493). A more specialized evaluation by an occupational therapist was recommended as to H.M.H.'s motor skills (Tr. 493). The generalized anxiety disorder and social anxiety disorders continued to describe his presentation, but he was further assessed with persistent depressive disorder with mood congruent psychotic features, *i. e.*, reported visual and audio hallucinations (Tr. 495). Despite not taking his ADHD medication on the day of the exam, H.M.H. was able to stay seated without fidgeting and rarely required redirection, with no overt inattention or hyperactivity (Tr. 495).

H.M.H.'s fifth grade math teacher Ann Stiles completed an evaluation in which she indicated that the claimant had no problem in most of the over 45 areas, and only a slight problem in four areas (Tr. 179-184). His grades from that year indicate that he received a B in math, social studies, language arts, and science; an A in music, art, and PE; and a C in reading (Tr. 187). Grades for the sixth grade reflects A's in instrumental music and reading; C's in social studies, math, and language arts; and an F in science (Tr. 241).

On October 1, 2018, state agency physician Kalpna Kaul, M.D. reviewed the record and completed a Childhood Disability Evaluation as to the six domains of functioning (Tr. 80-81). She determined that H.M.H. had *no limitation* in acquiring and using information, interacting and relating with others, and caring for yourself, and that he had *less than marked limitations* in attending and completing tasks, moving about and manipulating objects, and health and physical well-being (Tr. 80-81). On review, state agency physicians largely agreed with Dr. Kaul's assessment of the six domains of functioning, except they found that the claimant had no limitation in health and physical well-being (Tr. 92-93).

Following the ALJ's February 1, 2020 opinion, H.M.H. was admitted to a psychiatric hospital from February 28, 2020 through March 9, 2020 for suicidal ideation (Tr. 70-73). It appears he was discharged following his Guardian's request, and he was instructed to follow up with treatment providers that week (Tr. 70).

At step three in a childhood disability case, the ALJ must determine whether the child's impairment or combination of impairments medically equals or functionally equals the listings. *See Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001). If a child's impairment or combination of impairments does not meet or medically equal a listing, the ALJ must then determine whether the child's impairment functionally equals the listing, which means that the impairment (or combination of impairments) results in marked limitations in two domains of functioning or an extreme limitation in one domain of functioning. *See* 20 C.F.R. § 416.926a(a). These domains include: (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, and (vi) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1)(i)-(vi). When the ALJ determines there is a marked limitation in one of the six domains, he has found the limitation seriously interferes with the "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). An extreme limitation interferes very seriously with a child's ability to do these things. *Id.* § 416.926a(e)(3)(i). Consideration of functional limitations includes information pertaining to functioning, such as reports of classroom performance, observations from others, or evidence of formal testing. *Id.* § 416.926a(e)(1)(i-ii).

In his written opinion, the ALJ determined that H.M.H.'s impairments did not meet, medically equal, or functionally equal a listing. In making these findings, the ALJ summarized the evidence, including the testimony of H.M.H.'s mother and the medical evidence in the record (Tr. 19-28). The ALJ discussed each of the six domains of functioning and concluded that because H.M.H.'s limitations were not extreme or even marked in any of the domains, he did not functionally equal a listing (Tr. 20-28). Indeed, the ALJ found H.M.H. had "no limitation" in the domain of acquiring and using information, and that he had a "less than marked" limitation in the remaining five domains, *i. e.*, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being (Tr. 20-22). As relevant to attending and completing tasks, the ALJ noted that H.M.H. was in the low average range for quickly appearing symbols, below expected level for naming design copying, borderline for visuomotor precision, but that he only had a slight problem refocusing on tasks when necessary and completing schoolwork, he could pay attention when spoken to directly, focus to finish tasks, could change from activities, and could work without distracting self or others. Additionally, he noted that state reviewing physicians found he had no limitation (Tr. 20-21). As to interacting and relating with others, the ALJ noted that although he reported having problems making and keeping friends and did not play sports, Ms. Stiles had indicated he had no problem playing with other children, seeking attention appropriately, expressing anger and asking permission appropriately, and taking turns in conversation (Tr. 21). Additionally, his mother reported he could make new friends, got along with other adults, and got along with schoolteachers (Tr. 21). As to

moving about and manipulating objects, the ALJ noted that his motor function/coordination disorders were mild to moderate, including hand-writing problems and scoliosis, but his teacher reported he had no problems and his mother reported his physical ability was not limited.  Additionally, a 2019 well child examination demonstrated a normal gait and extremities, and no neurological findings (Tr. 21).  As to caring for yourself, the ALJ noted the claimant could not button up his clothes, tie his shoes, or hang up his clothes, but that he could be patient when necessary, take care of personal hygiene, and identify and appropriately assert emotional needs (Tr. 22).

The claimant contends both that the ALJ failed to consider relevant medical evidence, and that he erred in failing to find that his impairments were functionally equivalent to a Listing.  First, the claimant seems to assert that the ALJ failed to account for longitudinal evidence regarding H.M.H.'s poor nutrition (including being underweight and an extremely picky eater), poor fine motor skills, and problems with activities of daily living, as well as his mental impairments.  But the ALJ's opinion reflects that he *did* consider the treatment notes related to this evidence (Tr. 20-27).

Additionally, she contends that the Appeals Council erred in failing to consider the evidence related to H.M.H.'s inpatient psychiatric treatment for suicidal ideation on February 28, 2020, which she contends is supported by the longitudinal evidence. [3]

---

[3] There is some argument between the parties as to whether the Claimant waived this argument because the evidence is mentioned only as part of an introduction of the evidence in her Opening Brief, and no explicit argument is made that the Appeals Council's action was in error.  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [Plaintiff's] contentions that have been adequately brief for our review.").  Although the

Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to de novo review. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). The Appeals Council must consider additional evidence if "it is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (effective January 17, 2017 to December 15, 2020). If the Appeals Council fails to consider qualifying additional evidence, "the case should be remanded for further proceedings." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). However, if the additional evidence does not qualify for Appeals Council consideration, "it plays no further role in judicial review of the Commissioner's decision." *Id.* Here, the Appeals Council found that this evidence did not relate to the period at issue because the ALJ's decision was issued on February 5, 2020, and the hospitalization occurred on February 28, 2020 (Tr. 2). The undersigned Magistrate Judge has reviewed this record and find that this evidence does not relate to the relevant period ending on February 5, 2020. Accordingly, the record to be considered on review does not include this addition and the undersigned Magistrate Judge declines to consider it.

As to the claimant's second argument, she asserts that the ALJ mischaracterized and minimized the evidence as to four domains of functioning: interacting and relating with others, attending and completing tasks, moving about and manipulating objects, and caring for yourself. It is well-established that an ALJ may not "pick and choose among medical

---

undersigned Magistrate Judge agrees that this argument could have been more fully developed, it is nevertheless addressed here out of an abundance of caution.

reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008). However, the ALJ is not required to discuss in detail each piece of evidence in the record. *See Clifton*, 79 F.3d at 1009-10. ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). As discussed below, here the ALJ noted and discussed the findings of H.M.H.'s treating, consultative, and reviewing physicians, as well as the questionnaires completed by his teachers and counselor, and the undersigned Magistrate Judge finds that the ALJ's conclusion that H.M.H. has a less than marked limitation in the domains of interacting and relating with others, attending and completing tasks, moving about and manipulating objects, and caring for yourself is supported by substantial evidence.

In the four domains of functioning at issue - interacting and relating with others, attending and completing tasks, moving about and manipulating objects, and caring for yourself – the claimant cites to numerous records which she asserts should established that H.M.H. has either a marked or extreme limitation. However, the majority of the evidence the claimant cited in support of her arguments as to each of these domains was *prior* to the alleged onset date. And while the claimant contends the ALJ improperly disregarded the evidence prior to the alleged onset date as to the longitudinal assessment of his impairments, the ALJ's opinion reflects that he clearly reviewed and considered these records (Tr. 23). Moreover, the ALJ gave numerous reasons for not finding that the claimant had a "marked" or "extreme" limitation in these four domains, including the

neuropsychological evaluation, the evaluation from Ms. Stiles, his progress in occupational therapy, and his mother's own reports (Tr. 20-22). Furthermore, the possibility of drawing two different conclusions from the same evidence "does not prevent an administrative agency's findings from being supported by substantial evidence," and the undersigned Magistrate Judge may not "displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation and citation omitted). *See also Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

"In determining whether a child is disabled, the agency will accept a parent's statement of a child's symptoms if the child is unable to adequately describe them." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014). *See also* 20 C.F.R. § 416.929. "'In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying.'" *Knight*, 756 F.3d at 1176 (quoting *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001)). Pursuant to the applicable agency guidance, the decision also must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029, at *9 (Mar. 16, 2016).

In his written opinion, the ALJ noted H.M.H.'s mother's reports that he had a hard time staying on tasks and refocusing and that she reported he could make new friends and get along with schoolteachers, but that his motor function/coordination disorders caused him problems with his handwriting.  However, he also noted other reports where she stated his physical ability was not limited and her own report that the claimant could use zippers by himself, take a bath or shower without help, brush his teeth, comb and wash his hair, choose his own clothing, help around the house, and pick up and put away toys (Tr. 20-22).  The undersigned Magistrate Judge notes that the ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  As outlined above, the undersigned Magistrate therefore finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons for finding that H.M.H.'s subjective complaints were not believable to the extent alleged. *Alicia W. on behalf of J.L.S. v. Saul*, 2020 WL 863515, at *6 (N.D. Okla. Feb. 21, 2020) ("The problem with plaintiff's credibility argument is that the ALJ did not substantially reject any aspect of her or J.L.S.' testimony. Instead, the ALJ correctly summarized the testimony and explained how the testimony did not tend to show that J.L.S. was disabled. Even if the ALJ had found plaintiff to be fully credible, her testimony would not have supported any additional limitations for J.L.S. that were not already considered by the ALJ, and the Court finds that any alleged errors with the ALJ's credibility analysis do not require the Court to remand this case for further proceedings.").

The undersigned Magistrate Judge thus finds that substantial evidence supports the ALJ's decision as to H.M.H.  The essence of the claimant's appeal here is that the Court

should reweigh the evidence and reach a different result, which the Court cannot do. *See, e. g., Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). Accordingly, the decision of the Commissioner should be affirmed

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

DATED this 24th day of February, 2022.

_____
STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE